**WESTERN ENTERPRISES,
INC., Appellant,**

v.

**ARCTIC OFFICE MACHINES,
INC., Appellee.**

**No. 6851.**

Supreme Court of Alaska.

July 29, 1983.

---

Paul W. Waggoner, Anchorage, for appellant.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, and COMPTON, JJ., and ROWLAND, Superior Court Judge.*

## OPINION

PER CURIAM.

Arctic Office Machines, Inc. ("Arctic") transferred possession to Alyeska Engineers ("Alyeska") of business furnishings valued at $10,000.00. On March 1, 1979, Arctic and Alyeska executed an agreement entitled "Lease [of] Personal Property." The agreement states in part as follows:

> [Alyeska] hereby agree to use for the term of 3 years and [0] months, at the agreed rental of Three Hundred [and] Fifty Two & 80/100 Dollars ($352.80) for said term, payable as follows, to wit: $1,058.40 upon execution of this agreement, the receipt of which payment is hereby acknowledged, and the said sum of $352.80 on the first day of each and every month hereafter until the said sum of $12,700.80 shall have been fully paid .... [A]t end of lease period furniture may be purchased for [$]1,008.00. [Underlined portions were typed in the blanks of form agreement used.]

Alyeska used the furniture in business premises that it rented from Western Enterprises, Inc. ("Western"). After three months, Alyeska defaulted on its payments to both Arctic and Western. Western seized the furniture and, over the course of the next two years, sold it for $7,450.50. The net proceeds recovered by Western after deducting commissions amounted to $5,506.40.

In September of 1979, Arctic brought suit against Western for conversion of the furniture, contending that its interest as owner of the leased furniture was superior to

Western's interest and that Western had had no right to seize and sell the furniture. Western defended the suit, contending that Arctic's transaction with Alyeska was not the lease it purported to be, but was instead actually a sale and retention of a security interest in the furniture. Western contended that as lessor of the real property used by Alyeska, it also had an interest in the furniture. Western argued that its interest was superior to Arctic's because Western had perfected its security interest by taking possession of the furniture, while Arctic had done nothing to perfect its interest. Western thus concluded that it had acted properly in seizing and selling the furniture.

Following a non-jury trial, the superior court found that the transaction entered into between Alyeska and Arctic constituted a lease, rather than a sale of the furniture. The court concluded that Arctic's interest as owner and lessor of the furniture prevailed over Western's interest as lessor of the real property. Judgment was accordingly entered against Western.

Western appeals, contending that the superior court erred in finding that the purported lease was not in fact an agreement for the purchase of the furniture. As we have previously indicated, the labels used by a party to characterize its transaction are not determinative; it is the substance of the transaction and the intent of the parties that controls. *Stanley v. Fabricators, Inc.*, 459 P.2d 467, 469 (Alaska 1969). Thus, the mere fact that Alyeska and Arctic labeled their transaction a "lease" does not necessarily make it so.

This is recognized by the Uniform Commercial Code ("UCC"), which addresses the problem in terms of whether a security interest, consistent with a purchase and sale agreement, was created by the purported lease. AS 45.01.201(37), setting forth the relevant section of the UCC as adopted in this state, provides in part as follows:

* Rowland, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

"[S]ecurity interest" means an interest in personal property or fixtures which secures payment or performance of an obligation ... [. *U*]*nless a lease ... is intended as security, reservation of title under the lease ... is not a "security interest"* ... [. *W*]*hether a lease is intended as security is to be determined by the facts of each case;* however, (A) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (B) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a *nominal* consideration does make the lease one intended for security. [Emphasis added.]

We previously acknowledged three different tests to determine whether the purchase price specified in the option is "nominal" within the meaning of this section. The first test was to compare the price specified in the option with the value of the property at the time the option is to be exercised; the second test was to compare the price with the value of the property at the time the transaction was entered into; and the third was the "economic compulsion" test, in which a determination is made as to whether exercising the purchase option is the only sensible economic course for the holder of the option to pursue. *McGalliard v. Liberty Leasing Co.,* 534 P.2d 528, 532 & n. 13 (Alaska 1975). It had been the hope of this court that the three tests would complement each other and be viewed as different ways of approaching the same problem. It would appear, however, that the tests lend themselves instead to improperly providing three separate opportunities for sellers to look like lessors. We therefore find it necessary to overrule our pronouncement in *McGalliard* and return to using only the first test, which was set forth in *Stanley v. Fabricators, Inc.,* 459 P.2d 467, 469–70 (Alaska 1969). Accordingly, the nominality of an option price is to be determined only by comparing the price specified in the option with the value of the

property at the time the option is to be exercised.

Contrary to the suggestion of Western, we hold that the nominality of the option price is a factual determination that "shall not be set aside unless clearly erroneous." Alaska R.Civ.P. 52(a). *See McGalliard v. Liberty Leasing Co.,* 534 P.2d at 534 n. 19. Anticipating this ruling, Western contends that the superior court's finding that the option price was not nominal is clearly erroneous. We disagree. The evidence adequately supports the court's finding under the comparative price test. The option price was twenty percent of the value of the property at the time the option could be exercised. We are not left with a definite and firm conviction on the entire record that the superior court was mistaken in finding that twenty percent of the value of the property was not nominal. *Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979).

Our conclusion that the superior court's finding is not clearly erroneous does not, however, end our analysis. The superior court stated that whether or not the option price was nominal is conclusive as to whether Arctic's transaction with Alyeska was a lease or a sale of the furniture. This misconstrues AS 45.01.201(37). The statute states that "an agreement that upon compliance with the terms of the lease the lessee ... has the option to become the owner of the property ... for a nominal consideration *does* make the lease one intended for security." (Emphasis added.) Thus, a finding that the option price was nominal would conclusively establish that the transaction was a conditional sales agreement. It does not necessarily follow, however, that a finding that the option price was not nominal conclusively establishes that the transaction was the lease it purported to be. The statute specifically states that "unless a lease is intended as security, reservation of title under the lease ... is not a 'security interest'" and "whether a lease is intended as security is to be determined by the facts of each case." AS 45.01.201(37). We interpret the statute as making the nominality of the option price only one of the indicia of whether the

transaction is a lease or a purchase agreement.

We therefore hold that the fact that an option price is not nominal does not foreclose construing a purported lease as a purchase agreement. In this case, for example, we note that Arctic expressly refused to accept the furniture for resale after Western took possession of it. We also note that Arctic's manager made several statements indicating that the lease form was used merely because it presented tax advantages over a conditional sales contract. Finally, Arctic's invoice and accounting ledger indicate that, for Arctic's internal bookkeeping purposes, the transaction was considered to be an installment sale of the furniture to Alyeska. These and similar factors that might be present in this or other cases could reasonably lead the finder of fact to conclude that the underlying transaction was actually a sale of the property and a security agreement, rather than the lease it purported to be, even though the purchase price specified in the option was not nominal.

■ We therefore find it necessary to remand this case to the superior court for further consideration of whether Alyeska's transaction with Arctic was in fact a purchase agreement rather than a lease. The court should determine the true nature of the transaction by establishing the intent of the parties in light of all the facts and circumstances of the case, in accordance with AS 45.01.201(37). We direct attention to Annot., 76 A.L.R.3d 11 (1977) ("Equipment Leases as Security Interest Within Uniform Commercial Code § 1–201(37)"), which enumerates factors beyond the nominality of the option price that may be used to distinguish a bona fide lease from a purchase agreement. These factors include: (1) whether and to what extent the

purported lessee acquires an equity interest in the property; (2) whether a purported "option" is in fact unconditional; (3) the past practices of the parties in general and their course of conduct in the particular case; and (4) the terms of the agreement relating to such matters as insurance, risk of loss, acceleration and repossession. 76 A.L.R.3d at 54–66.

■ In order to protect the rights of commercial parties, we find it necessary to judicially adopt the policy of UCC § 9–408 by holding that the financing statement shall not be considered as evidence in making this determination.[1] *See American Standard Credit, Inc. v. National Cement Co.,* 643 F.2d 248 (5th Cir.1981). Similarly, whether or not a financing statement was filed shall also not be considered.

For the reasons stated, the judgment is REVERSED and the case is REMANDED to the superior court for further proceedings consistent with this opinion.

MATTHEWS, J., not participating.

---

1. UCC § 9–408 has been adopted prospectively in Alaska, codified as AS 45.09.408, but did not become effective until July 1, 1983. As indicated, we find it necessary to judicially adopt this section so that its terms may be given effect to cases filed prior to July 1983. The section provides as follows:

A ... lessor of goods may file a financing statement using the terms ... "lessor", "lessee", or the like instead of the terms specified

in AS 45.09.402. The provisions of AS 45.-09.401—45.09.408 apply as appropriate to the financing statement, but its filing may not of itself be a factor in determining whether or not the ... lease is intended as security (AS 45.01.201(37)). However, if it is determined for other reasons that the ... lease is so intended, a security interest of the ... lessor which attaches to the ... leased goods is perfected by the filing.