0098

MIDLAND GUARDIAN COMPANY, Respondent, v. Sarah THACKER, Appellant, and Robert Thacker, Defendant.

(314 S. E. (2d) 26)

Court of Appeals

*Lesly A. Bowers,* Columbia, *for appellant.*

*J. Reese Daniel,* of *Daniel & Daniel,* Columbia, *for respondent.*

Heard Dec. 12, 1983.

Decided Feb. 24, 1984.

GOOLSBY, Judge:

This is a claim and delivery action brought by the respondent Midland Guardian Company, a finance company, to obtain possession of a 1974 model mobile home, the collateral which secured a note given by the appellant Sarah Thacker and the defendant Robert Thacker. Midland did not seek a deficiency judgment. The appellant asserted a counterclaim for damages under Section 34-31-50 of the South Carolina Code of Laws (1976),[1] alleging that the contract of sale was usurious. The trial court gave Midland possession of the mobile home and held the contract not usurious. The appellant appeals the denial of her usury claim. We reverse and remand the case to the Court of Common Pleas.

The issues before us are whether the question regarding the usury counterclaim presents a justiciable controversy and whether a transaction involving the sale of a mobile home on deferred payments constitutes a sale at a time price or a loan and cloak for usury.

The Thackers purchased a mobile home from Colonial Mobile Homes (Colonial). Both signed a security agreement which recited a "cash price" of Six Thousand Four Hundred Forty-two and 80/100 Dollars ($6,442.80) and a "deferred payment price" of Fourteen Thousand Forty and 80/100 Dollars ($14,040.80). It listed an annual percentage rate of thirteen and 82/100 percent (13.82%). They promised to make one

---

[1] Section 57(1)(g) of 1982 Act No. 385 repealed Section 34-31-50 of the Code. *See* 62 STAT. 2283, 2328 (1982). The repealed statute reads:

Any person who shall receive or contract to receive as interest any greater amount than is provided for in § 34-31-30 shall forfeit all interest and the costs of the action and such portion of the original debt as shall be due shall be recovered without interest or costs. When any amount so charged or contracted for has been actually received by such person he shall also forfeit double the total amount received in respect of interest, to be collected by a separate action or allowed as a counterclaim in any action brought to recover the principal sum.

hundred and twenty (120) payments at One Hundred Eleven and 84/100 Dollars ($111.84) each. In bold type, the security agreement disclosed that "[t]he Buyer, having been quoted both a time price (the deferred payment price shown in item 8 above) and a lesser cash price, has elected to buy the collateral for the time price."

At the time the security agreement was executed, Section 34-31-30 of the Code[2] set the maximum interest upon written contracts at eight percent (8%).

The security agreement was executed by the Thackers upon a form provided Colonial by Midland Guardian. Colonial assigned its interest in the security agreement and the collateral to Midland Guardian on the same day the transaction was consummated. Prior to executing the security agreement, the appellant attempted without success to secure a loan from a local bank to purchase the mobile home at the cash price.

After having paid approximately Six Thousand Dollars ($6,000), the Thackers defaulted. The balance due was Seven Thousand Four Hundred Ninety-three and 86/100 Dollars ($7,493.86).

Midland Guardian argues first that the issue regarding the appellant's counterclaim does not present a justiciable controversy. Because no deficiency was sued for by Midland Guardian and possession only of the collateral was sought and finally obtained, Midland Guardian maintains that any determination that the transaction was usurious would have "no bearing on . . . the right of possession." Besides, it also argues, the offset of any damages the appellant would have been entitled to had she prevailed on her usury counterclaim would not have been sufficient to pay the remaining debt on the mobile home.

▋ Before any action can be maintained, of course, there must exist a "justiciable controversy." *Dantzler v. Callison*, 227 S. C. 317, 88 S. E. (2d) 64, 65 (1955).

---

[2] "No greater interest than six percent per annum shall be charged, taken, agreed upon or allowed upon any contract arising in this State for the hiring, lending or use of money or other commodity, either by way of straight interest, discount or otherwise, except upon written contracts wherein, by express agreements, a rate of interest not exceeding eight percent may be charged;" S. C. Code Ann. § 34-31-30 (1976).

A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute of difference of a contingent, hypothetical or abstract character.

*Guimarin & Doan, Inc. v. Georgetown Textile and Mfg. Co., Inc.*, 249 S. C. 561 at 566, 155 S. E. (2d) 618 (1967).

An action to recover usurious interest will lie at common law. 47 C. J. S. *Interest & Usury* § 210 at 360 (1982).

Prior to its repeal, Section 34-31-50 prescribed that double the amount received as usurious interest could be collected as damages in an action for usury asserted as a counterclaim to an "action brought to recover the principal sum." Also, where, as in the instant case, an action is brought to recover personal property pledged to secure credit or a debt, Section 15-33-50 of the Code[3] expressly permits the assertion of a counterclaim which arises out of the same transaction; and such a counterclaim, obviously, can properly embrace, as here, allegations of usury.

Clearly, the appellant's counterclaim presents a justiciable controversy. The fact that Midland Guardian sought and obtained possession of the mobile home on its claim and delivery cause of action does not affect in any way the viability of the appellant's counterclaim for usury damages. If usury were established in this case, the appellant would be entitled to statutory damages irrespective of Midland Guardian's success on its claim and delivery action. As to the assertion by Midland Guardian that no justiciable controversy exists because the amount of any usury damages recovered by the appellant would be insufficient to pay the amount owed by her on the mobile home, any issue regarding the amount owed Midland Guardian by the appellant is im-

---

[3] "In every action for the recovery of personal property which has been pledged in any way to secure credit or a debt the defendant may plead his counterclaim arising out of the same transaction, and the jury in such case may find, in addition to the verdicts now provided by law, the amount due to the plaintiff, if any. In such case the defendant may pay such amount and costs, and the property shall thereafter be free from the encumbrance." S. C. Code Ann. § 15-33-50 (1976).

material. Midland Guardian, as pointed out above, did not seek a deficiency judgment; therefore, the question of a deficiency and its amount is not before us. At any rate, the appellant is entitled to seek usury damages regardless of whether a deficiency exists or not, particularly since Section 15-33-50, separate and apart from Section 34-31-50, gives one the right to assert a usury claim which arises out of a transaction that pledges personal property to secure credit of a debt. The usury controversy, then, is a real and substantial one.

We turn now to the principal issue of whether this State's usury law was violated when the Thacker's bought the mobile home from Colonial. Midland maintains, and the trial judge so found, that Midland Guardian was not subject to the maximum interest rate set by Section 34-31-30 because the contract between the Thackers and Colonial fell within the judicially-created exception to usury statutes known as the "time price" rule. *See Brown v. Crandall*, 218 S. C. 124, 61 S. E. (2d) 761 (1950). On the other hand, the appellant contends that the transaction was not a true time price sale but was a usurious loan instead.

Because the instant action was one tried at law by a judge without a jury, the judge's findings of fact have the same force and effect as a verdict of a jury unless he committed some error of law leading him to an erroneous conclusion or unless the evidence is reasonably susceptible of the opposite conclusion only. *Robinson v. Carolina Casualty Ins. Co.*, 232 S. C. 268, 101 S. E. (2d) 664 (1958). The facts in this case, however, are not in dispute. All that is challenged is a conclusion of law based on these facts. This court can review that conclusion. *Masonic Temple, Inc. v. Ebert*, 199 S. C. 5, 18 S. E. (2d) 584 (1942); *cf. Shelton v. Southern Kraft*, 195 S. C. 81, 10 S. E. (2d) 341, 129 A. L. R. 1280 (1940); 5 C. J. S. *Appeal & Error* § 1454c at 586(1958); *cf. also* 5 Am. Jur. (2d) *Appeal & Error* § 842 at 286 (1962).

When the contract between the Thackers and Colonial was entered into, on October 12, 1974, usurious contracts clearly violated the public policy of South Carolina. S. C. Code Ann. § 8-5 (1962). That policy cannot be easily sidestepped. Our Supreme Court in *Brown v. Crandall, supra,* warned those who would attempt to circumvent this State's usury law that

[t]he courts will not hesitate to pierce the veil of any plan designed to evade the usury law and in doing so will disregard the form and consider the substance of the transaction.

218 S. C. at 128, 61 S. E. (2d) 761.

We recognize, however, that a bona fide sale of property on credit at a price which exceeds the cash price by more than the legal rate of interest does not constitute usury. *Southeastern Roofing Distributors M.C.N.C., Inc. v. Ridgill Roofing & Siding Co.*, 276 S. C. 591, 281 S. E. (2d) 120 (1981); *Brown v. Crandall, supra.* But the sale will be considered usurious when the sale is in fact at an agreed cash price and the form of a sale on credit is employed for the purpose of evading the usury statute. *Brown v. Crandall, supra.* Our task, then, is to examine the real nature of the transaction questioned here. As the court asked in *Daniel v. First National Bank of Birmingham*, 227 F. (2d) 353 at 356 (5th Cir. 1955), *reh'g denied*, 228 F. (2d) 803 (4th Cir. 1956), "Was the sale at a bona fide time price or at a cash price combined with a loan or extension of credit?"

A close relationship between the seller of personal property and the financing institution can trigger an application of the usury statute despite language in the contract appearing to invoke the time price exception. *See National Bank of Commerce of Seattle v. Thomsen*, 80 Wash. (2d) 406, 495 P. (2d) 332 (1972); *Daniel v. First National Bank of Birmingham, supra; see also* Annot., 14 A. L. R. (3d) 1065 § 14 at 1136 (1967); W. Warren, *Regulation of Finance Charges in Retail Installment Sales,* 68 Yale L. J. 839 at 843 (1959). Indeed, the time price exception has no application to a lending company that purchases the loan instrument from the merchant for the actual cash price when it is privy to the terms of the original transaction. *Lee v. Household Finance Corp.*, 263 A. (2d) 635 (D. C. App. 1970).

Here, the evidence shows that Colonial, the seller, and Midland Guardian, the finance company, were so closely allied that the original transaction was, in substance, a direct loan from Midland Guardian to the Thackers. As the record discloses, the finance company furnished the seller with security agreement forms and rate charts. *See*

*Daniel v. First National Bank of Birmingham, supra; Hare v. General Contract Purchase Corp.,* 220 Ark. 601, 249 S. W. (2d) 973 (1952). And while the seller undertook to obtain credit information from the buyer, the seller did nothing with the data except transmit it to the finance company. Further, the finance company conducted the credit check and indicated approval of the credit application before any contract was made. *See Carper v. Kanawha Banking & Trust Co.,* 157 W. Va. 477, 207 S. E. (2d) 897 at 912 (1974); *Lee v. Household Finance Corp., supra; cf. Jackson v. Commercial Credit Corp.,* 90 Ga. App. 352, 83 S. E. (2d) 76 (1954). Also, the security agreement was assigned to the finance company on the same day of its execution. *See McGalliard v. Liberty Leasing Co. of Alaska, Inc.,* 534 P. (2d) 528 at 530 (Alaska 1975), *overruled on other grounds, Western Enterprises, Inc. v. Artic Office Machines, Inc.,* 667 P. (2d) 1232 (Alaska 1983); *Lee v. Household Finance Co., supra.*

Moreover, there are other indicia that the purported time price sale involved a usurious loan. The time price, here referred to as the "deferred payment price," was determined by adding amounts for insurance and a "finance charge" to the "cash price." *See Daniel v. First National Bank of Birmingham, supra.* Additionally, Colonial received from Midland Guardian in exchange for the security agreement its cash price and nothing else. *See Lee v. Household Finance Corp., supra; cf. McGalliard v. Liberty Leasing Co. of Alaska, supra* at 530. Finally, and in many ways the most revealing, Colonial never contemplated that it would extend credit to the Thackers. *See National Bank of Commerce of Seattle Thomsen, supra.* This fact is made clear by the following exchange between the buyers' attorney and the mobile home salesman:

Q. ... You stated that if the finance company turned you down on a customer's application for credit, you would go to another finance company?

A. Yes, M'am.

Q. ... If all the finance companies that you normally dealt with turned you down, would you indeed make a credit sale to that customer?

A. No. m'am.

Thus, the correct conclusion to be drawn from the undisputed facts is "that the real transaction was a sale at a cash price accompanied by a loan or extension of credit to which the [finance company] was privy throughout." *Daniel v. First National Bank of Birmingham, supra* at 357. When so viewed, the finance charge of Six Thousand One Hundred Sixty-six Dollars ($6,166) on a mobile home costing, exclusive of insurance, Six Thousand Four Hundred Forty-two and 80/100 Dollars ($6,442.80) clearly emerges as usurious interest on a loan and not as an additional price paid for credit. The trial judge, therefore, erred as a matter of law in not holding that the time price rule was inapplicable. The usury law was violated when the undisputed evidence showed Midland Guardian was privy to the terms of the original transaction and purchased the security agreement from Colonial for the cash price of the mobile home. In our judgment, no other reasonable conclusion can be drawn from the undisputed facts.

Midland Guardian argues, however, that *Carolina Industrial Bank v. Merrimon*, 260 N. C. 335, 132 S. E. (2d) 692 (1963), the principal case on which the trial court relied, supports its contention that the transaction in this case constituted a credit sale and not a loan. We do not agree. There is nothing in *Merrimon* to indicate that the sale in that case was dependent on the acceptance of the assignment of the contract by a finance company, as was the case here. Also, the purchase of the note and mortgage by the bank in *Merrimon* took place three(3) days after their execution whereas the assignment of the security agreement in this case occurred on the same day as its execution, in fact, on the same form.

Because we have concluded that the transaction involved here did not constitute, under the particular facts shown, a valid time price sale, the judgment appealed from is reversed and the case is remanded to the Court of Common Pleas for a determination of the amount to which the appellant is entitled on her counterclaim as statutory damages.

Reversed and remanded.

SHAW and CURETON, JJ., concur.