500 S.E.2d 496

**AUTO OWNERS INSURANCE COMPANY, Respondent,**

v.

**Olympia S. LANGFORD, Individually, and as Personal Representative of the Estate of Semaj Gray, Appellant.**

**No. 2822.**

Court of Appeals of South Carolina.

Submitted Feb. 3, 1998.
Decided March 30, 1998.

S. Murry Kinard and S. Kirkpatrick Morgan, Jr., both of Walker, Morgan and Kinard, Lexington, for appellant.

H. Clayton Walker, Jr., of Swagart & Walker, Columbia, for respondent.

STILWELL, Judge:

This is an automobile insurance case. The trial court determined that Olympia S. Langford was not a resident relative entitled to recover underinsured benefits under her grandmother's automobile insurance policy. Langford appeals. We affirm.[1]

## I.

On July 9, 1995, Langford and her six-month-old son, Semaj, were riding in a vehicle that collided head-on with a pickup truck. Semaj was killed and Langford suffered severe injuries. The medical bills exceeded $200,000 and, after exhausting all other coverage, Langford remained indebted to the hospital.

Auto Owners Insurance Company's liability insurance policy, issued to Langford's grandmother, extended coverage to "relatives living with [the insured] who do not own an automo-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

bile." Langford claimed she was entitled to benefits under her grandmother's insurance policy.

Auto Owners instituted this declaratory judgment action. The parties stipulated that Langford and Grandmother were related and that neither Langford nor Semaj owned a car. The determinative issue, therefore, was whether Langford and Semaj were "living with" Grandmother within the meaning of that term of the policy.

The trial court concluded that Langford and her son were not living with her grandmother for purposes of coverage under Auto Owners's policy. The court found Langford and her son were, at best, "transient visitors in grandmother's home," merely "drifting in and out for a few days at a time."

## II.

On appeal, Langford contends there is no evidence to support the trial court's factual finding that she was not a resident relative of her grandmother's house. We disagree.

A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. An issue, essentially one at law, will not be transformed into one in equity simply because declaratory relief is sought. *Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991). It is clear that in South Carolina an insurance policy is a contract between the insured and the insurance company and the terms of the policy are to be construed according to contract law. *Estate of Revis v. Revis,* 326 S.C. 470, 484 S.E.2d 112 (Ct.App.1997). Contract actions are actions at law. *Hofer v. St. Clair,* 298 S.C. 503, 381 S.E.2d 736 (1989). In an action at law, on appeal of a case tried without a jury, we may not disturb the trial judge's findings of fact unless those findings are "wholly unsupported by the evidence or controlled by an erroneous conception or application of the law." *Maddux Supply Co. v. Safhi, Inc.,* 316 S.C. 404, 406, 450 S.E.2d 101, 102 (Ct.App.1994).

Insofar as Langford argues that the court's findings of fact are without evidentiary support, her appeal is manifestly without merit.

Prior to March 1995, Langford lived with her mother. When Langford and her mother would argue, Langford would sometimes leave her mother's house and stay elsewhere for a few days. In fact, beginning in 1994 and continuing through the months leading to the accident, Langford occasionally stayed with her grandmother after leaving her mother's house.

Langford's grandmother claimed these visits were sporadic, unpredictable, and often unannounced, and the stays never lasted more than three consecutive nights. Langford's grandmother testified Langford never received a key to the house, paid rent, cooked, cleaned, washed laundry or helped maintain anything in the house.

Langford testified she lived at her grandmother's house at the time of the accident and had been living there since March 1995. Other witnesses for Langford testified that Langford kept her television set, radio and clothes at her grandmother's house.

In April 1995, a few months before the accident, Langford applied for a state identification card and listed her address as her mother's address. In May 1995, Langford applied for subsidized housing and gave her mother's address and telephone number as hers. She received her welfare benefits at her mother's address.

On the day of the accident Langford's mother told representatives of the hospital that Langford lived with her. Langford's mother also informed the funeral home and the Department of Health and Environmental Control that Langford's address was her address. When Langford was released from the hospital, she went to her mother's house rather than her grandmother's house.

■ Langford argues that, by requiring her to show that she had taken up permanent residence with her grandmother, the court misapplied the standard articulated in *Buddin v. Nationwide Mutual Insurance Company*, 250 S.C. 332, 157 S.E.2d 633 (1967).

■ *Buddin* involved an accident caused by a college student driving his uninsured vehicle. The insurer for the injured parties sought to recoup its losses in an action against the tortfeasor on the theory that he was a resident of his

uncle's household and was therefore covered under the uncle's insurance policy. A "resident of the same household," the supreme court held, "is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." *Id.* at 339, 157 S.E.2d at 636 (quoting *Hardware Mut. Cas. Co. v. Home Indem. Co.*, 241 Cal.App.2d 303, 50 Cal.Rptr. 508 (1966)).[2] Obviously, then, a person may be a resident relative for insurance purposes even though he does not have an intent to permanently reside with the insured.

Langford argues the trial court applied the wrong standard and specifically erred (1) in making a finding that focused on her lack of "intent to reside permanently at her grandmother's"; (2) in asking Langford's grandmother whether Langford had ever "lived with [her] on a permanent basis?" and (3) in concluding that Langford's visits to her grandmother's house were not "proof of any settled intent to remain."

Even though the court emphasized that Langford's residential status was not permanent, the court's ultimate finding that Langford was not a resident relative of her grandmother's house was not "manifestly influenced or controlled by an error of law." After all, in concluding that Langford and Semaj "were transient visitors in grandmother's home, and did not live there," the court was faithful to the language in *Buddin* describing a "resident" as someone, "other than a temporary or transient visitor," who lives with another in the same house for some period of time. *See Buddin,* 250 S.C. at 339, 157

---

**2.** The policy language at issue is not identical to the policy language in *Buddin.* There the policy extended coverage to relatives of the policyholder, or his spouse, if the relative was a "resident of the same household." *Buddin,* 250 S.C. at 334, 157 S.E.2d at 635. Here, the policy provides for coverage, under certain conditions, for relatives "living with" the insured. Because both sides, as well as the trial court, assume that *Buddin* provides the governing standard, we will proceed, for purposes of this case, under the assumption that the difference, if any, between "resident" and "living with" is of no moment. *See Bartlett v. Nationwide Mut. Fire Ins. Co.,* 290 S.C. 154, 348 S.E.2d 530 (Ct.App.1986) (holding that trial court's ruling on an issue was the law of the case where appellant failed to take exception to it both before the trial court and on appeal) *overruled on other grounds by Charleston County Sch. Dist. v. State Budget and Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993).

S.E.2d at 636. Furthermore, the trial judge saw and heard the witnesses and was in a better position to evaluate their credibility. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981).

Because we believe that, even setting aside the question of permanency, the record amply supports the court's conclusion that Langford was a transient visitor and thus did not live with her grandmother for purposes of satisfying the *Buddin* test, we hold that the court's decision was not controlled by an error of law.

For these same reasons, we reject Langford's argument that the trial court should have construed the language in the policy broadly enough to find coverage. It is true that clauses of inclusion in a policy of insurance are to be broadly construed in favor of coverage, and that where there are doubts about the existence or extent of coverage the language of the policy is to be "understood in its most inclusive sense." *Buddin,* 250 S.C. at 337–38, 157 S.E.2d at 635. We should not, however, torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties. *Gambrell v. Travelers Ins. Companies,* 280 S.C. 69, 310 S.E.2d 814 (1983).

In our view, therefore, the trial court did not err and we accordingly

**AFFIRM.**

GOOLSBY and HEARN, JJ., concur.