519 S.E.2d 120

**Tamara RICHARDSON, Appellant,**

v.

**SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent.**

**No. 3016.**

Court of Appeals of South Carolina.

Heard May 13, 1999.

Decided June 21, 1999.

Rehearing Denied Sept. 25, 1999.

Colden R. Battey, Jr., and Derek C. Gilbert, both of Harvey & Battey, of Beaufort, for appellant.

A. Parker Barnes, Jr., and David S. Black, both of A. Parker Barnes, Jr., P.A. & Associates, of Beaufort, for respondent.

HUFF, Judge:

Tamara Richardson (Tamara) filed this action against South Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) seeking a declaration that she could stack the uninsured motorist coverage available under her father's policies. The trial court found Tamara was not a resident of her father's household at the time of the accident, and therefore, was not entitled to stack. Tamara appeals. We affirm.

On May 8, 1993, Tamara, a twenty-five year old graduate student, was driving an Isuzu Trooper owned by Burrows Transfer, when Ellis Ernest Woodard crossed over the center line of the highway and hit her. Woodard was killed in the accident and Tamara suffered serious injuries. Woodard was driving an uninsured vehicle at the time.

On January 3, 1994, Tamara filed this action seeking a declaration that she was entitled to uninsured motorist coverage under three policies.[1] In May 1994, Farm Bureau paid $100,000.00, the policy limits, to Tamara under the policy

---

[1]. The father was the named insured on a 1988 Mercedes 420 SL with the mother "listed on the vehicle." Burrows Transfer was the named insured on the 1985 GMC pickup with the father "listed on the vehicle." Although the father was the named insured on the Isuzu with the daughter "listed on the vehicle," the Isuzu was owned by Burrows Transport, Inc. according to the accident report.

covering the Isuzu. Farm Bureau refused to tender the policy limits on the other policies because Tamara did not live with her parents, and thus, was not a resident relative for stacking purposes.

By agreement, the parties submitted briefs to the trial court on the legal issue of whether Tamara was entitled to stack. The trial court found as a matter of law that Tamara was not entitled to stack and entered judgment in favor of Farm Bureau.

## STANDARD OF REVIEW

In a non-jury action at law, the judge's findings of fact will not be disturbed on appeal unless they are without evidentiary support. *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 468 S.E.2d 292 (1996). The trial court's findings of fact have the same force and effect as a jury verdict unless it committed some error of law leading to an erroneous conclusion or unless the evidence is reasonably susceptible of the opposite conclusion only. *Noisette v. Ismail*, 299 S.C. 243, 384 S.E.2d 310 (Ct.App.1989), *rev'd on other grounds*, 304 S.C. 56, 403 S.E.2d 122 (1991). We must affirm the trial court if there is any evidence that reasonably supports its decision. *Id.* In reviewing the findings, we must view the evidence and all its reasonable inferences in the light least favorable to the losing party below. *Id.*

## DISCUSSION

The pivotal question in determining whether an insured has the right to stack is whether he is a Class I or Class II insured. *Fireman's Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 295 S.C. 538, 370 S.E.2d 85 (1988). The right to stack is available only to a Class I insured. *Id.* A Class I insured is a named insured, his spouse, and relatives residing in his household. *Concrete Services, Inc. v. U.S. Fidelity & Guar. Co.*, 331 S.C. 506, 498 S.E.2d 865 (1998).

As a preliminary issue, Tamara must establish that she is an insured under the Mercedes policy.[2] *Id.* Tamara

---

2. Because the supreme court has determined that a corporation cannot have a spouse or family members, Tamara cannot be a Class I insured

relies on *Buddin v. Nationwide Mutual Ins. Co.*, 250 S.C. 332, 157 S.E.2d 633 (1967). In *Buddin*, the supreme court said a "resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." *Id.* at 339, 157 S.E.2d at 636. (citation omitted).

Tamara contends she should be entitled to stack because a clause of inclusion in an insurance policy should be broadly construed.

> It is true that clauses of inclusion in a policy of insurance are to be broadly construed in favor of coverage, and that where there are doubts about the existence or extent of coverage the language of the policy is to be "understood in its most inclusive sense." We should not, however, torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties.

*Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 584, 500 S.E.2d 496, 499 (Ct.App.1998) (citations omitted). In *Langford*, policy provided for coverage, under certain conditions, for relatives "living with" the insured. Although the granddaughter was staying with her grandmother at the time of the accident, we held the trial court's finding that Langford was a transient visitor was supported by the record.

In this case, the father's policy reads:

> We will pay damages for bodily injury or property damage a covered person is legally entitled to collect from the owner or operator of an uninsured motor vehicle. . . . Covered person means: 1. you and any family member. . . .

"Family member" is previously defined in the policy as "a person related to you by blood, marriage or adoption who is a resident of your household."

The trial court found Tamara "did not have enough contact with the Myrtle Beach residence to qualify as a member of that household." While acknowledging Tamara's connections to her parents' household and her parents' financial support,

---

under the policy issued to Burrows Transport for the 1985 GMC pickup. *See Concrete Services, Inc. v. U.S. Fidelity & Guar. Co.*, 331 S.C. 506, 511, 498 S.E.2d 865, 866 (1998).

the trial court essentially determined Tamara was a transitory visitor. We agree.

The record fully supports the trial court's finding that Tamara was not a resident of her father's household. She kept an exercise machine, some furniture, and seasonal clothes in Myrtle Beach. Tamara acknowledges she lived in various apartments in the Charleston area from 1987 until the time of the accident in 1993. Tamara visited Myrtle Beach "usually once a month" for three to four days at a time. According to her discovery responses, from August 1989 until the accident in May of 1993, she only spent a portion of the summers with her parents twice, and the remaining time was spent in Charleston.

Further, she filed her own tax returns and claimed herself as a dependent. She did not have her tax refund sent to Myrtle Beach. In deposition she stated "I want [the tax refund] to come right back to where I'm living [Charleston], not to have to go to Myrtle Beach to pick it up." Her drivers' licence listed her Charleston address. Tamara was registered to vote in Charleston. She worked regularly claiming an income of $10,322.00 in 1991 and $10,326 in 1992.

Finding evidence to reasonably support the trial court's order, the order is **AFFIRMED.**

GOOLSBY and STILWELL, JJ., concur.