609 S.E.2d 537

J. Samuel COAKLEY, individually and as Trustee of a Special Needs Trust for Christian Coakley, Respondent,

v.

HORACE MANN INSURANCE CO., Scott Andrew Mitchell, Christopher N. Mitchell and Claudia Dee Dee Mitchell, Appellants.

No. 3929.

Court of Appeals of South Carolina.

Heard Nov. 17, 2004.

Decided Jan. 24, 2005.

Rehearing Denied March 18, 2005.

148

Phillip E. Reeves, and Jennifer D. Eubanks, both of Greenville, for Appellants.

Benjamin C. Harrison, and David H. Tyner, both of Spartanburg, for Respondent.

WILLIAMS, J.:

Respondent filed this declaratory judgment action to determine the applicability of certain automobile liability policies issued by Horace Mann Insurance Company (Horace Mann). The circuit court found coverage under all three policies. We affirm.

## FACTS

On August 19, 1994, sixteen-year-old Christian Coakley was a passenger in a car being driven by seventeen-year-old Scott Andrew Mitchell. As they were traveling towards a friend's house, Scott lost control and the car slammed into a tree. The force of the impact shattered a vertebra in Christian's neck, partially severing his spinal cord. As a result of these injuries, Christian is a permanent quadriplegic.

The automobile, a 1984 Mazda RX–7, belonged to Scott's older brother Christopher Mitchell and was titled in Christopher's name. Christopher, a student at Clemson University, resided in an apartment in Clemson, normally kept the car with him, and was its primary user.[1] Prior to the accident,

---

1. Horace Mann contested ownership of the RX–7, but the Answer filed on behalf of Scott, Christopher, and Dee Dee in the underlying litigation admits that Christopher owned the car.

Christopher went on a trip to California and left the car at his mother's house. Christopher was on the way back from California when the accident occurred. Scott was a high school student and lived with his mother in Spartanburg, South Carolina.[2] Claudia "Dee Dee" Mitchell, Scott and Christopher's mother, testified in her deposition that Scott had permission to use the car.

The car was insured through Horace Mann, with Dee Dee being the named insured. The policy provided liability limits of $50,000.00 for personal injury. Dee Dee also maintained policies on three other vehicles. Two of these policies carry liability limits of $50,000.00, and the third has a liability limit of $250,000.00. None of these other policies provided primary coverage for the vehicle involved in the accident.

The special needs trust (the Trust) created on behalf of Christian commenced this action seeking compensation for Christian's injuries.[3] The Trust sought recovery under the policy covering the RX–7, as well as excess coverage under the policies on the other three cars. Horace Mann initially denied liability, but following discovery, the parties entered into a covenant not to execute. Pursuant to the covenant, Horace Mann paid out the liability limits on the policy covering the RX–7. The covenant also allowed the Trust to bring a declaratory judgment action to determine the applicability of the three additional policies. In exchange for permission to bring the action, the Trust agreed that recovery, if any, would be limited to $350,000.00—the combined total of the three policies.

The Trust then filed this declaratory judgment action alleging that although the other policies do not provide primary coverage on the RX–7, they provide excess coverage for "non-owned" vehicles. The Trust argued the RX–7 was a non-owned vehicle because Christopher owned the car and was not a relative within the meaning of the policies.

---

2. Scott and Christopher's parents divorced in the 1980's.

3. By Order dated July 28, 1998, the court established a Supplemental Needs Trust for Christian to receive funds to assist him with his extraordinary care needs.

The parties agreed to transfer the litigation to a non-jury docket and the case was submitted upon memoranda of authority, copies of the policies in dispute, and the deposition testimony of the Mitchell defendants. On March 5, 2003, the trial court issued its order, in which it found excess liability coverage was available to Christian under all three policies. Accordingly, judgment was entered in the amount of $350,000.00. Horace Mann, Scott, Christopher, and Dee Dee (collectively "Appellants") have appealed from that Order.

## STANDARD OF REVIEW

A declaratory judgment action to determine coverage under an automobile liability policy is an action at law. *Travelers Indem. Co. v. Auto World of Orangeburg, Inc.*, 334 S.C. 137, 140, 511 S.E.2d 692, 694 (Ct.App.1999). In an action at law tried by a judge without a jury, the judges findings will not be disturbed on appeal unless no reasonable evidence supports the judges conclusions. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). Since Appellants have admitted that no facts are in dispute in this case, this court can review conclusions of law based on those facts. *Midland Guardian Co. v. Thacker*, 280 S.C. 563, 568, 314 S.E.2d 26, 29 (Ct.App.1984).

## LAW/ANALYSIS

### I. The Insurance Policy

"Insurance policies are subject to general rules of contract construction." *State Farm Mut. Auto. Ins. Co. v. Calcutt*, 340 S.C. 231, 234, 530 S.E.2d 896, 897 (Ct.App.2000) (citations omitted). Accordingly, courts "should give policy language its plain, ordinary and popular meaning." *Id.* Furthermore, courts should not rewrite policy language or torture its meaning to extend coverage never intended by the parties. *Torrington Co. v. Aetna Cas. & Sur. Co.*, 264 S.C. 636, 643, 216 S.E.2d 547, 550 (1975). When an insurance contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Century Indem. Co. v. Golden Hills Builders, Inc.*, 348 S.C. 559, 565, 561 S.E.2d 355, 358 (2002). However, "[a]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the

insured and strictly against the insurer." *Stewart v. State Farm Mut. Auto. Ins. Co.*, 341 S.C. 143, 151, 533 S.E.2d 597, 601 (Ct.App.2000).

In the instant case, all four Horace Mann policies issued to Dee Dee Mitchell contain identical policy language. The policies extend liability coverage to payment of damages which an insured becomes legally liable to pay because of bodily injury to others caused by or resulting from the ownership, maintenance or use of the covered vehicle. Scott is an "insured" under the policy because he is a relative of Dee Dee.

The policies also extend liability coverage to the use of other cars by an insured. The pertinent language provides as follows: "Bodily Injury and Property Damage Liability coverages extend to the use, by an insured, of . . . a non-owned car while being used with the permission of the owner." (emphasis omitted). The policies further provide that if there is other coverage, the applicable policy will be excess: "If an insured is using a . . . non-owned car, our liability insurance will be excess over other collectible insurance." (emphasis omitted).

The definition of "non-owned car" has been replaced by an amendatory endorsement. As amended, the definition provides as follows:

Non-owned car means a private passenger car . . . not:

1. owned by;
2. registered in the name of; or
3. furnished or available for the regular use of you or your relatives. The use must be within the scope of consent of the owner or person in lawful possession of it.

The policies define "relative" as follows: "Relative means a person related to you by blood, marriage or adoption who lives with you. It includes your unmarried and dependent child who is away at school." (emphasis omitted).

Horace Mann has conceded liability on the liability policy covering the RX–7 and tendered the limits on that policy. The other three policies do not cover the RX–7, but they do cover non-owned vehicles. These policies specifically provide that if there is other coverage on a non-owned vehicle, they provide excess coverage. The heart of the issue is whether the RX–7 was a non-owned vehicle, and that question turns on

whether Christopher owned the car or was a relative within the meaning of the policy.

## II. Ownership of the Car

 Appellants first argue the RX–7 could not have been a non-owned car because Dee Dee Mitchell, not Christopher, was the owner of the vehicle. The trial court found Christopher owned the car and this finding will not be disturbed on appeal unless no reasonable evidence supports the courts conclusions. *Townes*, 266 S.C. at 86, 221 S.E.2d at 775. We note that Scott, Dee Dee, and Christopher admitted in their Answer that Christopher owned the RX–7. The Covenant Not to Execute also states that Christopher is the owner. Appellants assert in their brief that the facts in this case are not in dispute and Dee Dee testified that the car is titled in Christopher's name. Therefore, we find sufficient evidence in the record to sustain the trial courts finding that Christopher owned the car, not Dee Dee Mitchell.

## III. Status of Christopher in Relation to Dee Dee Mitchell

Since the RX–7 was not "owned by" or "registered in the name of" Dee Dee Mitchell, the. named insured, the car could only be a non-owned vehicle if it was not "furnished or available for the regular use of" Dee Dee Mitchell or her "relatives." It is undisputed that the RX–7 was not available for the regular use of Scott at the time of the accident. Additionally, the trial court found, and Appellants have not disputed, that the car was not available for the regular use of Dee Dee at the time of the accident. Therefore, the car qualifies as a non-owned vehicle unless Christopher was a relative of Dee Dee under the policies.

 The determination of resident relative status is a question of fact. *Auto Owners Ins. Co. v. Langford*, 330 S.C. 578, 581, 500 S.E.2d 496, 497 (Ct.App.1998). The trial court found that Christopher did not reside with Dee Dee, nor was he dependent on her at the time of the accident. This finding must be affirmed unless no evidence reasonably supports it. *Townes*, 266 S.C. at 86, 221 S.E.2d at 775.

■ Christopher qualifies as a relative under the policy if he is (1) "related to" her and (2) "lives with" her. The first prong of the test is easily satisfied. Christopher is Dee Dee's son. Therefore, he is related to her by blood. The second prong, whether Christopher "lives with" Dee Dee, contains an additional qualification. He is deemed to live with her if he is her "unmarried and dependent child who is away at school." Christopher was not married and was "away at school." At issue, then, is whether Christopher was a "dependent child" of Dee Dee at the time the accident occurred.

Although there is evidence in the record which would support an inference that Christopher was dependent on his mother, there is also evidence to support the trial court's finding that "if [Christopher] were dependent on either of his parents, it was the father to whom he was dependent."[4] For instance, although Dee Dee testified in her deposition that she provided some financial support to Christopher, such as money for groceries, gas, and insurance, she also admitted that Christopher's father paid the majority of his tuition. Christopher explained that his father provided him with a lump sum payment of $3500.00 every semester for tuition and living expenses.

Some of the testimony in this regard was conflicting. Dee Dee testified that she and Christopher's father paid for Christopher's rent while he was living in an apartment in Clemson. Christopher, however, testified he did not receive income, help with tuition, or rent money from Dee Dee. Christopher stated that his father paid for these expenses. Similarly, although Dee Dee testified she paid for gasoline and repairs on Christopher's car, Christopher testified that he paid these expenses. When conflicting testimony is presented, the trial court is in a better position to determine credibility. *See Epperly v. Epperly,* 312 S.C. 411, 414, 440 S.E.2d 884, 885–886 (1994).

---

4. The dissent bases its opinion largely on its interpretation of the trial court's order and this statement in particular. The dissent believes the trial court "interpreted the policy provision to mean that Christopher could only be dependent on one of his parents" and, therefore, erred as a matter of law. We do not believe the trial court made such a finding. When considering the trial court's treatment of this issue as a whole, we believe it found Christopher was not dependent on either of his parents. The trial court's statement simply asserts that if he were dependent on either of the parents, it would be the father.

Therefore, we find there is evidence which supports the trial court's ruling that Christopher was not a dependent of Dee Dee.[5]

The trial court's ruling that Christopher did not "live with" Dee Dee is supported by our case law. The residency test in South Carolina is found in *Buddin v. Nationwide Mutual Ins. Co.*, 250 S.C. 332, 157 S.E.2d 633 (1967). In *Buddin,* the supreme court noted that a "resident of the same household is one, other than a temporary or transient visitor, who lives together with others in the same house for a period of some duration, although he may not intend to remain there permanently." *Id.* at 339, 157 S.E.2d at 636 (citations omitted). Because Christopher did not live in the same household as Dee Dee, he would not qualify as a resident relative under this test. Several cases have elaborated on the *Buddin* test, but none of them would have found Christopher to reside with Dee Dee.[6] Accordingly, we affirm the trial court's finding that he was not her dependent, and he did not live with her for purposes of the policies.

Because there is evidence in the record to support its conclusion, we agree with the trial court that the RX–7 was a "non-owned car" within the meaning of the policies. It is

5. Appellants also make much of the fact that Dee Dee listed Christopher as a dependent on her income tax return the year of the accident. However, as the trial court noted, she has claimed both children as dependents on her income taxes since she and their father divorced in the 1980s, as she was permitted to do by court order. Such an order issued in relation to a divorce proceeding does not amount to a determination of dependency.

6. *See Auto Owners Ins. Co. v. Langford,* 330 S.C. 578, 500 S.E.2d 496 (Ct.App.1998) (holding that a granddaughter was not a resident relative with her grandmother where she usually lived with her mother, and only stayed with her grandmother when she and her mother fought); *Richardson v. S.C. Farm Bureau Mut. Ins. Co.,* 336 S.C. 233, 519 S.E.2d 120 (Ct.App.1999) (holding that a daughter was not a resident relative of her parents' household where she had moved away as a graduate student several years before, maintained her own residence in another town and only kept a few items at her parents' home); *Auto–Owners Ins. Co. v. Horne,* 356 S.C. 52, 586 S.E.2d 865 (Ct.App.2003) (holding that a daughter was not a resident-relative of her father, the non-custodial parent, for purposes of stacking UIM coverage where she lived with her mother in Conway and only occasionally visited her father in Saluda).

undisputed that upon such a finding, the other three policies become applicable as excess coverage. Thus, the only remaining issue is the amount of coverage.

## IV. Amount of Coverage

 The trial court found that all three policies applied and could be stacked. The general rule is that stacking of liability coverage is permitted unless limited by statute or by a valid policy provision. *State Farm Mut. Auto. Ins. Co. v. Moorer*, 330 S.C. 46, 60, 496 S.E.2d 875, 883 (Ct.App.1998). A policy provision that purports to limit stacking of statutorily required coverage is invalid. *Id.* Although liability coverage is required, non-owned vehicle coverage is not and, therefore, may be limited by contract. *Id.* Therefore, the question is whether the policy language effectively prohibited stacking.

The trial court based its ruling on a plain reading of the policy provisions located in the amendatory endorsements under the heading "If There is Other Coverage" reproduced below:

1. Policies Issued by *Us* to *You*
If two or more vehicle liability policies issued by *us* to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.
2. Other Liability Coverage Available From Other Sources
Subject to item 1, if other vehicle liability coverage applies, *we* are liable only for *our* share of the damages. *Our* share is the percent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.
3. *Temporary Substitute Car, Non–Owned Car, Trailer*
If a *temporary substitute car,* a *non-owned car* or a *trailer* designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess.

(emphasis in original).

Specifically, the trial court found these provisions clearly and unambiguously provided excess coverage for non-owned vehicles. In so ruling, the trial court read paragraph three as being independent of the limitation contained in paragraph

one. The court reasoned that if the drafters of the policy intended the limitations of paragraph one to apply to paragraph three, they would have expressly included the limitation, or some reference to it, in paragraph three. Alternatively, the trial court held that if it was possible to read paragraph one as qualifying paragraph three, then it was just as reasonable to read paragraph three as qualifying paragraph one. Thus, the court reasoned that when an insurance policy is ambiguous it must be construed in a light most favorable to the insured. Accordingly, the trial court held that the policies provided liability coverage for Scott in the amount of $350,000.

Appellants, on the other hand, argue that the limitation of paragraph one qualifies the non-owned coverage provided by paragraph three. According to the Appellants, even if the trial court found the policies provided excess coverage, because Horace Mann issued all three policies to Dee Dee, coverage should have been limited to the policy with the highest limit or $250,000. We disagree.

Initially, we note this court considered similar policy language in *Moorer* and found in that case it effectively prohibited stacking of non-owned coverage. However, while the policy language in *Moorer* is identical to that in the current policies, there are a number of significant differences in the two cases. *Id.* at 59, 496 S.E.2d at 882. For instance, in *Moorer*, only the first and third paragraphs are excerpted. In addition, the heading of the third paragraph, while couched in the same language as the current policies, is neither bolded nor italicized as it is in the policies under consideration. *Id.*

We find these differences make the cases distinguishable. As the trial court noted, the second paragraph concerning "Other Liability Coverage" specifically references the limitation of paragraph one. Thus reading the provisions together one could easily come to the conclusion that because paragraph two references the limitation and paragraph three does not, paragraph three is not subject to the limitation. In addition, because the heading of paragraph three in the current case is in bold print and italicized, it supports the trial court's interpretation that it is intentionally set off from the other provisions and meant to be read as existing indepen-

dently. Accordingly, we agree with the trial court's interpretation of the policies.

## CONCLUSION

Based on the foregoing, we find sufficient evidence in the record to support the trial court's ruling that the additional policies provided excess coverage for Christian's injuries. Therefore, the trial court's ruling is

**AFFIRMED.**

GOOLSBY, J., concurs.

HEARN, C.J., dissents in a separate opinion.

HEARN, C.J., dissenting:

I respectfully dissent and would hold that Christopher was a resident relative of his mother at the time of the accident.

The majority's decision to affirm is largely driven by our standard of review in a law case, i.e. whether there is any evidence to support the trial judge's decision. While I agree there is evidence supporting the trial judge's decision that Christopher was dependant on his father, I would hold the trial judge erred in not finding him dependant on his mother as well.

The uncontroverted evidence reflects that at the time of the accident in 1994, Christopher was a student at Clemson who relied on both his mother and father for financial support. Specifically, the record demonstrates that his mother contributed to his rent and was a guarantor on his lease. Although Christopher testified his father gave him a lump sum of money each semester for his tuition, the record also clearly shows that his mother contributed toward his tuition, groceries, and automobile expenses. In fact, Christopher testified that he had no idea about the insurance on his vehicle because he simply didn't "handle that." His mother testified without contradiction that she paid the premium on Christopher's car insurance. She also paid the property taxes on the vehicle, claimed Christopher as a dependent on her tax returns, and maintained a room for him in her home. Christopher received his mail at her address and came home approximately every

two weeks while he was at Clemson to do his laundry. Christopher testified that he had not stayed in his father's home overnight since 1992.

Although I believe the record actually shows that Christopher was more dependent on his mother than on his father, I recognized there is some evidence, albeit slight, to support the trial judge's decision that Christopher may have been more financially dependent on his father than on his mother. Nevertheless, it is simply irrelevant that Christopher may have been more dependent on one parent than the other. In either case, he still qualifies as a resident relative under the plain and ordinary language of the policy. The policy at issue defines relative thusly: "Relative means a person related to you by blood, marriage or adoption who lives with you. It includes your unmarried and dependent child who is away at school." In my view, Christopher falls squarely within this definition of resident relative.

To the extent the trial judge interpreted the policy provision to mean that Christopher could only be dependent upon one of his parents and found he was not dependent upon his mother, he erred as a matter of law. Thus, I would reverse the trial judge's decision that Christopher was not his mother's resident relative.