511 S.E.2d 692

The TRAVELERS INDEMNITY COMPANY, Secondary Appellant,

v.

AUTO WORLD OF ORANGEBURG, INC., Cheryl Diane Albergotti, as Personal Representative of the Estate of Joseph McKewn Albergotti, Jr., deceased, Melissa D. Albergotti, as Personal Representative of the Estate of Gail M. Osborne, deceased; Faye S. Osborne, as Personal Representative of the Estate of Flynn C. Osborne, deceased, and South Carolina Farm Bureau Mutual Insurance Company,

Melissa Albergotti, Personal Representative of the Estate of Gail Mims Albergotti Osborne, Respondent,

v.

Travelers Insurance Company, South Carolina Farm Bureau Mutual Insurance Company; and Cheryl Diane Albergotti, as Personal Representative of the Estate of Joseph McKewn Albergotti, Jr.,

of whom South Carolina Farm Bureau Mutual Insurance Company is, Primary Appellant.

No. 2927.

Court of Appeals of South Carolina.

Heard Dec. 8, 1998.

Decided Jan. 18, 1999.

138

Lewis C. Lanier, of Horger, Horger, Lanier & Knight, of Orangeburg, for Primary Appellant.

William P. Davis, of Baker, Barwick, Ravenel & Bender, of Columbia, for Secondary Appellant.

Charles H. Williams, of Williams & Williams, of Orangeburg; and Gedney M. Howe, III, of Charleston, for Respondent.

ANDERSON, Judge:

This declaratory judgment action was brought to determine whether the death of Gail M. Osborne was a covered event under either one or two automobile insurance policies. South Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau") issued one of these policies to Flynn C. Osborne. Travelers Indemnity Company ("Travelers") issued the other policy to Auto World of Orangeburg, Inc. ("Auto World"). Farm Bureau and Travelers appeal an order concluding both policies provided coverage. We reverse.

## FACTS/PROCEDURAL BACKGROUND

Gail M. Osborne and her husband, Flynn C. Osborne, were killed by shotgun blasts on April 11, 1993, while they were sitting in their car which was stopped offside a rural highway. The parties stipulated the evidence is sufficient for a jury to conclude Joseph Albergotti, Jr., killed the Osbornes. On that day, Albergotti was driving, with permission, a car owned by Auto World. At the time of the shooting, the car driven by Albergotti was parked behind the Osbornes' car. Albergotti shot the couple while standing outside the car. A nearby resident and a driver passing by witnessed the incident. Their recollections differ somewhat.

Heather Hart witnessed the incident from her back porch. She estimated the distance separating herself and the cars was that of a football field. Hart first noticed the cars just before they pulled off of the road. She said they were traveling very slowly, but she observed nothing to suggest one of the cars forced the other off the road. She recalled one car came to a stop directly behind the other, leaving enough room that the assailant was able to stand between the cars. The second car was the assailant's. After the cars stopped, the assailant exited his car, approached the rear of the other car, and began firing. He fired one or two shots into the rear window of the Osbornes' car, one or two shots into the passenger's window, and one or two shots into the driver's window. The assailant then got back into his car and drove away in the direction from which he came.

Dennis Keller was driving on Highway 310 toward Holly Hill when he noticed a car on the side of the road facing the

opposite direction. The car had its flashers on and a man was inside waving his hands in the air. Another man stood outside the car. Concerned that the man in the car was having a seizure, Keller decided to stop. As Keller passed by, however, the man standing by the car rushed back to the second car, removed a gun from it, and aimed the gun at the first car. Keller recalled the second car was a car-length behind the first. Standing at the rear of the front car, the assailant fired the gun. He did not prop the gun up on his car when firing. The assailant returned to his car. Keller observed the car "swing around" and leave, but could not tell the direction it went. Later that day, Albergotti committed suicide.

Melissa Albergotti, the personal representative of Gail Osborne's estate, sued Joseph Albergotti's estate for wrongful death. Travelers sought a declaratory judgment the garage policy it issued to Auto World provided no liability coverage for Gail Osborne's death. Farm Bureau sought a declaratory judgment the policy it issued to Flynn Osborne provided no underinsured motorist coverage for the death. The parties stipulated that if the Travelers policy provided coverage, the proceeds payable would be limited to $15,000. The parties further stipulated any coverage provided by the Farm Bureau policy would be limited to $15,000.

The Master-in-Equity issued an order concluding both policies provided coverage. Travelers and Farm Bureau appeal that order.

### STANDARD OF REVIEW

A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. *Felts v. Richland County,* 303 S.C. 354, 400 S.E.2d 781 (1991). The dispositive issue in this case is whether the death is a covered event under either the Travelers or Farm Bureau policies. An action to determine coverage under an automobile policy is an action at law. *See Noisette v. Ismail,* 299 S.C. 243, 384 S.E.2d 310 (Ct.App.1989), *rev'd in part on other grounds,* 304 S.C. 56, 403 S.E.2d 122 (1991). *See also United States Fire Ins. Co. v. Macloskie,* 320 S.C. 459, 465 S.E.2d 759 (Ct.App.1995) (declaratory judgment action to determine coverage under insurance policy's omnibus clause is action at law,

and in action at law tried without jury, findings of fact made by trial court have same force and effect as those of jury). In an action at law tried without a jury, the findings of fact made by the trial court will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

## LAW/ANALYSIS

Farm Bureau and Travelers argue the Master-in-Equity erred in concluding the policies provided coverage for Gail Osborne's death because her death did not arise out of the "ownership, maintenance, or use" of the two vehicles. We agree.

The law concerning coverage of events which arise out of the "ownership, maintenance, or use" of automobiles has evolved over time. The development of our current law began with *Nationwide Mut. Ins. Co. v. Brown,* 779 F.2d 984 (4th Cir.1985). In that case, a truck's passenger, Toby Brown, grabbed the steering wheel causing the truck to collide with a car. Brown then exited the truck and fatally shot his estranged wife, Lynda Brown, the driver of the car. In affirming the denial of coverage, the Fourth Circuit Court of Appeals reasoned:

> First, under the Nationwide Dunn policy, it is clear that the use of Dunn's truck for transportation of Toby Brown to the scene of the shooting was merely incidental, remote from the type of conduct that is reasonably foreseeable with the normal use of such a vehicle; and not the causative factor in producing Lynda Brown's death. Rather, Toby Brown's assault, an act wholly independent of the use of the truck, caused the death. Thus, the incidental use of Dunn's truck in the shooting does not meet the causal relation test of coverage.

*Nationwide Mut. Ins. Co.,* 779 F.2d at 989 (citations omitted).

The first two requirements of our current test emerged in *Hite v. Hartford Acc. & Indem. Co.,* 288 S.C. 616, 344 S.E.2d 173 (Ct.App.1986). Hite worked at a car dealership. His employer gave permission and provided automobiles for Hite's use. The automobiles were insured by Hartford. On March

27, 1981, Hite drove back from supper to the car dealership in an automobile provided by his employer. Leaving the car running, Hite got out of the car and approached the dealership on foot. He heard the night watchman yell to him that someone (William Martin) had backed into a new truck. Hite walked fifty feet across the parking lot to tell Martin, who was sitting in a car, not to leave. Martin then accelerated the vehicle. Hite's legs were run over by the left rear tire. At that time, Hite was not in, on, or touching a vehicle insured by Hartford. In determining whether an injury sustained remote to the actual operation of the vehicle was encompassed by the term "use," this Court held:

What appears to be crucial to many courts in determining whether an injury produced by another vehicle or person falls within the ambit of "use" is the existence of a causal connection between an accident or injury and the use of the vehicle. It has been held that the existence of a causal connection obviates the necessity of finding that the injury was directly and proximately caused by the use of the vehicle, and affords coverage for injuries bearing almost any causal relation with the insured vehicle. The injury must, however, be foreseeably identifiable with normal use, maintenance, and ownership of the vehicle. If the injury was directly caused by some independent or intervening cause wholly disassociated from, independent of or remote from the use of the automobile, the injury cannot be said to arise out of its "use." Even if there is some remote connection between the use of the automobile and the injury complained of, if the injury is directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile, the injury is not the result of the "use" of an automobile.

In the instant case [Hite] left the insured automobile, walked toward the dealership, and answered the call of the night watchman by walking fifty feet to tell Martin not to leave after he had backed into a truck. [Hite's] injury was directly caused by Martin, and this was an independent or intervening cause wholly disassociated from, independent of, and remote from the use of the insured automobile. It cannot be said that being struck fifty feet from the insured automobile by another vehicle while answering a call for

assistance of the night watchman is foreseeably identifiable with normal use, maintenance and ownership of the vehicle. It is difficult to see where use of the insured automobile was directly connected with or a cause of the ensuing accident.

... [T]he key to determining whether injuries remote to the operation of an automobile occur during a "use" of the vehicle is the existence of a causal connection between the injury and the use. Such a causal connection has not been established in this case, where the injuries are the direct result of an intervening cause.

*Hite,* 288 S.C. at 620–22, 344 S.E.2d at 176–77 (citations omitted).

In *Wausau Underwriters Ins. Co. v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992), our Supreme Court articulated a two-pronged test for determining when an injury arises out of the "ownership, maintenance, or use" of a vehicle. First, the party seeking coverage must establish a "causal connection between the vehicle and the injury." *Howser,* 309 S.C. at 272, 422 S.E.2d at 108. Second, there must exist no act of independent significance breaking the causal link. *Id.*

In *Howser, supra,* the Court ruled uninsured motorist coverage was applicable where an insured was injured when she was pursued, threatened, and then shot by an unknown assailant in a car. At the time of the shooting, the insured was driving her vehicle when the unknown assailant began following her and then "bumped" the back of her vehicle with his automobile. The assailant pulled alongside Howser and threatened her with a gun while attempting to get her to pull over. When Howser tried to escape in her vehicle, the assailant fired several shots at her vehicle and she was wounded.

The crucial issue in the *Howser* case was whether the injuries sustained by Howser arose out of the "ownership, maintenance, or use" of the assailant's vehicle. The Court determined there was a sufficient causal connection between the use of the assailant's vehicle and Howser's injuries where the assailant's vehicle was an "active accessory" to the ongoing assault. The Court explicated:

The causation required is something less than proximate cause and something more than the vehicle being the mere site of the injury. . . .

In the case at bar, it is apparent that the unknown vehicle was an active accessory to this assault. This is not a case in which the assailant merely used the vehicle to provide transportation to the situs of the shooting as was found in *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir.1985). Nor is it a case where the assailant happened, incidentally, to be sitting in a stationary vehicle at the time of the attack. Only through use of his vehicle was the assailant able to closely pursue Howser, thereby enabling him to carry out the pistol assault. The gunshot was the culmination of an ongoing assault, in which the vehicle played an essential and integral part. Additionally, only a motor vehicle could have provided the assailant a quick and successful escape. Thus, we find a sufficient causal connection exists between the use of the assailant's vehicle and Howser's injuries.

*Howser*, 309 S.C. at 272–73, 422 S.E.2d at 108. After finding causation, the Court held it must determine if an act of independent significance occurred breaking the causal link. *Id.* The Court concluded there was no act of independent significance which broke the causal link as "the unknown driver's use of his vehicle and the shooting were inextricably linked as one continuing assault." *Id.* at 274, 422 S.E.2d at 109.

The *Howser* Court did not specifically address whether the vehicle must be used for transportation purposes at the time of the injury to be included in the mandated coverage. Thereafter, in *Canal Ins. Co. v. Insurance Co. of North America*, 315 S.C. 1, 431 S.E.2d 577 (1993), the Court added a third requirement to the two-pronged *Howser* test: it must be shown the vehicle was being used for transportation at the time of the assault.

In *Home Ins. Co. v. Towe*, 314 S.C. 105, 441 S.E.2d 825 (1994), the South Carolina Supreme Court addressed whether injuries received by a victim when he was struck by a bottle thrown by a passenger in a passing vehicle arose out of the "ownership, maintenance, or use" of Towe's automobile. The

passenger threw the bottle from the moving vehicle at a road sign. However, he missed the sign and the bottle shattered on the steering wheel of a tractor being driven by the victim, who sustained serious injuries. The *Towe* Court explained:

The use of the automobile placed Alexander in the position to throw the bottle at the sign and the vehicle's speed contributed to the velocity of the bottle increasing the seriousness of McClaskey's injuries. As in *Wausau,* the automobile was an active accessory that gave rise to the injuries. Therefore, we find that the Court of Appeals did not err in holding that a causal connection exists between the use of Towe's automobile and McClaskey's injuries.

. . . .

The use of the automobile and Alexander's throwing of the bottle were, as in *Wausau,* "inextricably linked" as one continuing act. Accordingly, there was no act of independent significance that broke the causal connection between the use of the automobile and McClaskey's injuries.

*Towe,* 314 S.C. at 107–08, 441 S.E.2d at 827 (citations omitted).

This Court considered the extent of coverage under the uninsured motorist provision of an automobile insurance policy in *Carraway v. Smith,* 321 S.C. 23, 467 S.E.2d 120 (Ct.App. 1995). The victim was injured by broken glass when a bullet struck his windshield as he sat at an intersection. The bullet was fired by the driver of an uninsured vehicle which had stopped in front of the victim's car. The driver had exited the vehicle and engaged in conversation with another person on the sidewalk. The victim remained in his vehicle stopped behind the assailant's car. After talking for several minutes, the driver pulled out a gun and began shooting at the person on the sidewalk. One of the bullets hit the victim's windshield.

In applying the test enunciated by our Supreme Court in *Howser,* this Court expounded:

We believe the trial judge erred in finding a causal connection between Smith's use of the red vehicle and Carraway's injuries. Smith exited the car and carried on a conversation with a third person for several minutes before the shooting occurred. Even if the use of the car and the shooting were connected, that link was broken by Smith's

actions. Unlike the facts in *Wausau*, there was no ongoing use of a vehicle in this case to carry out the attack.

. . . .

We decline to extend the reasoning of the *Wausau* case to this fact situation. We hold that Carraway's injuries were caused by an independent act wholly separate from the use of the vehicle.

*Carraway*, 321 S.C. at 26, 467 S.E.2d at 121–22.

This Court found coverage in *State Farm Mut. Auto. Ins. Co. v. Bookert*, 330 S.C. 221, 499 S.E.2d 480 (Ct.App.1998), *cert. granted*, (November 6, 1998), which involved a shooting in the parking lot of a McDonald's restaurant. Two of the three assailants were involved in a dispute with the victim and his friends at another restaurant earlier in the evening. The victim, while standing at the McDonald's entrance, was shot by the front seat passenger of a moving vehicle. This Court concluded:

Here, the entire incident was a shooting by the occupants of the Tracker against a group of people with whom they had the initial altercation. Besides transporting the assailants and their weapons to the scene of the shooting, the vehicle served as a "launching pad" for the assault. The gunman's car was not the situs of the accident nor was it merely the means by which the assailant traveled to the situs. It was the "launching pad" for the attack. Further, the vehicle allowed the assailants to circle the McDonald's restaurant while seeking out their targets. The vehicle also put the assailants in the position to shoot and then escape quickly and easily. Two of the assailants, including the one who shot Bookert, used the vehicle to immediately flee the scene. *See Howser, supra* (Court held only motor vehicle could have provided assailant a quick and successful escape). Furthermore, the automobile was in motion when the shots which injured Michael Bookert were fired.

We conclude the Geo Tracker was an "active accessory" to the assault sufficient to constitute a causal connection.

*Bookert*, 330 S.C. at 232–33, 499 S.E.2d at 486.

Additionally, this Court found no act of independent significance broke the causal link:

Here, the use of the automobile and the assault are "inextricably linked" as one continuing act. The assailants used the vehicle to arrive at the scene, to circle the parking lot searching for the group with which they had a previous encounter, and to travel in while shooting Bookert. The vehicle began to move forward immediately before the shots were fired and was moving when the assault occurred. After the shooting, two of the assailants fled the scene in the Tracker. Hence, no act of independent significance broke the causal link between the use of the vehicle and the assault.

*Bookert,* 330 S.C. at 235, 499 S.E.2d at 487 (citation omitted). Finally, this Court ruled the vehicle was being used for transportation purposes at the time of the attack. *Id.*

Recently, our Supreme Court revisited the issue as to when an injury arises out of the "ownership, maintenance, or use" of a vehicle. In *State Farm Fire and Cas. Co. v. Aytes,* 332 S.C. 30, 503 S.E.2d 744 (1998), our Supreme Court applied the current three-pronged test to a situation where the victim was shot by her assailant while she sat in the passenger seat of her own car after her assailant had driven her, against her will, to an area on his mother's property. The assailant stood outside the passenger door when he shot the victim in the foot. Holding the causal connection requirement was not satisfied, the Court elucidated:

An insured is legally entitled to recover damages arising out of the "ownership, maintenance, or use" of an uninsured vehicle. S.C.Code Ann. § 38–77–140 (1989). The two-pronged test for determining when an injury arises out of the ownership, maintenance, or use of an uninsured vehicle is set out in *Wausau Underwriters Ins. Co. v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992). First, the party seeking coverage must establish a causal connection between the vehicle and the injury. Second, there must exist no act of independent significance breaking the causal link. A third requirement was added in *Canal Ins. Co. v. Insurance Co. of North America,* 315 S.C. 1, 431 S.E.2d 577 (1993): it must be shown the vehicle was being used for transportation at the time of the assault.

The causal connection is established where it can be shown the vehicle was an "active accessory" to the assault.

*Howser, supra.* The causation required is something less than proximate cause and something more than the vehicle being the mere site of the injury. *Id.* The injury must be foreseeably identifiable with the normal use of the vehicle. *Nationwide Mut. Ins. Co. v. Brown,* 779 F.2d 984 (4th Cir.1985). The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred.

In this case, the vehicle was used to transport Dawson to another location. The assailant driver got out of the car and went around to the passenger side where Dawson was sitting. Dawson retrieved a gun from the glove compartment in an effort to defend herself from Aytes. However, Aytes gained control of the gun and while he was standing outside of the car, he fired the gun striking Dawson in the foot. State Farm contends the stationary car was merely the site of the injury and not an "active accessory" to the assault....

... Coverage was not found in *Nationwide Mut. Ins. Co. v. Brown, supra,* where fatal shooting occurred when husband, a passenger in a truck, caused the truck driver to collide with his wife's vehicle and husband jumped out of truck and shot his wife in her vehicle. The court concluded that the use of the truck for transportation to the scene of the shooting was merely incidental, remote from the type of conduct that is reasonably foreseeable with the normal use of a vehicle and not the causative factor in producing wife's death. Instead, the assault in *Brown* was viewed by the court as an act wholly independent of the use of the truck and the cause of the death. The incidental use of the truck in the shooting was not found to meet the causal relation test of coverage.

. . . .

**There was not a causal connection in this case as the vehicle was not an active accessory, nor was it being used for transportation at the time of the injury. Further, if there was a causal link, it was broken when the assailant exited the vehicle. The only connection between the car and the injury is the fact that Dawson was sitting in the car when she was shot. Therefore, we do**

**not find Dawson's injuries resulted from the ownership, maintenance, or use of her vehicle.**

*Aytes,* 332 S.C. at 33–35, 503 S.E.2d at 745–46 (emphasis added).

Farm Bureau and Travelers challenge three of the Master's findings of fact. The challenged findings were:

3. I find that on April 11, 1993, Gail M. Osborne was riding as a passenger in a vehicle owned and operated by her husband, Flynn C. Osborne, and that Joseph M. Albergotti, Jr., was operating a Ford LTD automobile which was proceeding behind the automobile in which Gail M. Osborne was riding.

4. I find that Joseph M. Albergotti caused the vehicle in which Gail M. Osborne was riding to pull off of the roadway and thereafter exited his vehicle and shot and killed Gail M. Osborne, after which he used his vehicle as a means of quick escape after shooting Gail M. Osborne.

5. I find that Joseph McKewn Albergotti, Jr. used the Auto World vehicle to pursue his ex-wife, carrying his shotgun in this vehicle in order to carry out his attack. He also used the vehicle in order to closely follow the Osborne car at a very close distance and thus cause it to pull off the road. The Osborne car pulled over in a rural, desolate section of the highway with its hazard lights on indicating an emergency situation. Additionally, I find that at some point Mr. Osborne had his arms over his head with his hands moving indicating his surrender and leading me to conclude that the Albergotti vehicle had forced the Osborne vehicle to stop. I find that the Auto World vehicle played an essential and integral part in the ongoing assault and it was only through the use of his vehicle that he was able to carry out the assault. Thus, in accordance with my findings above I also find that there was a causal connection existing between the use of the vehicle and the injuries to Gail M. Osborne.

As to the Master's findings regarding facts occurring outside the presence of eyewitnesses, the record lacks evidence to support those findings. With regard to the findings which were directly supported by the eyewitness accounts, we find no error.

## CONCLUSION

■ In the present case, there was *no* causal connection as the vehicles were not "active accessories," nor were the vehicles being used for transportation at the time of the injury. Assuming arguendo a causal link existed, the causal link was broken when the assailant exited the vehicle being driven by him. Further, the only connection between the Osborne car and the injuries is the fact that the Osbornes were sitting in the car when they were shot. Significantly, neither vehicle was being used for transportation at the time of the attack, as required by *Canal Ins. Co. v. Insurance Co. of North America*, 315 S.C. 1, 431 S.E.2d 577 (1993). Accordingly, the order of the Master-in-Equity is

**REVERSED.**

HOWELL, C.J., and STILWELL, J., concur.