548 S.E.2d 880

SOUTH CAROLINA PROPERTY AND CASUALTY
GUARANTY ASSOCIATION and Jackie
Cooper Ford, Inc., Plaintiffs,

v.

Richard Scott YENSEN, Michael Price Barnhill, State Farm Mutual Automobile Insurance Company, Nationwide Insurance Company, Jefferson–Pilot Fire & Casualty Company, Jackie B. Cooper, J. Daniel Cooper, Mark Cooper, Guy Moross, Theodore Huttner, Midland Risk Insurance Company, and The Insurance Reserve Fund of South Carolina, Defendants,

of whom Richard Scott Yensen and Michael
Price Barnhill are, Appellants

and South Carolina Property and Casualty Guaranty Association, State Farm Automobile Insurance Company, and Jefferson–Pilot Fire & Casualty Company, are, Respondents.

No. 3299.

Court of Appeals of South Carolina.

Reheard Jan. 9, 2001.

Decided June 14, 2001.

514

Thomas R. Goldstein, of Belk, Cobb, Infinger & Goldstein; and Jerry N. Theos, of Uricchio, Howe, Krell, Jacobson, Toporek & Theos, both of Charleston, for appellant.

G. Mark Phillips, of Nelson, Mullins, Riley & Scarborough; and Henry E. Grimball, of Buist, Moore, Smythe & McGee, both of Charleston; Hoover C. Blanton and Ruskin C. Foster,

both of McCutchen, Blanton, Rhodes & Johnson, of Columbia, for respondent.

## ORDER DENYING PETITION FOR REHEARING

### PER CURIAM:

The Court withdraws its original opinion and substitutes the attached opinion. After a careful consideration of the Petition for Rehearing En Banc, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded and hence, there is no basis for granting a rehearing.

It is, therefore, ordered that the Petition for Rehearing En Banc be denied.

HEARN, Chief Judge:

This is a declaratory judgment action involving issues of automobile insurance coverage among three insurers. The trial court granted summary judgment to Jefferson Pilot Fire and Casualty Company (Jefferson Pilot) and a directed verdict to South Carolina Property and Casualty Guaranty Association (Guaranty Association) and State Farm Insurance Company (State Farm). Richard Scott Yensen and Michael Price Barnhill appeal. We affirm with respect to Jefferson Pilot and State Farm, and reverse and remand with respect to Guaranty Association.

## FACTS AND PROCEDURAL BACKGROUND

On June 15, 1991, Yensen's Camaro became disabled on Interstate 26 in Charleston County. The Camaro was on the shoulder of the highway. Yensen walked to a pay phone and called the highway patrol. Yensen was picked up by Officer Barnhill.

Yensen and Barnhill returned to Yensen's car. Barnhill parked his patrol car behind the Camaro and summoned a tow truck. A flatbed wrecker belonging to Specialty Towing arrived, and the driver of the wrecker parked in front of the Camaro to hook it up for towing. Yensen and Barnhill exited the patrol car and stood beside the driver's side of the Camaro while the tow truck driver hooked chains to it.

Theodore Huttner was driving a Chevrolet Beretta on Interstate 26 traveling toward Charleston. Huttner struck Yensen, Barnhill, and the tow truck driver, injuring them. Huttner did not stop, but was apprehended nearby after he ran off the road. The Beretta was owned by Huttner's employer, Jackie Cooper Ford Inc. (Jackie Cooper). Yensen and Barnhill subsequently filed negligence actions against Huttner. Yensen received a $900,000 verdict and Barnhill received an $85,000 verdict.

At the time of the accident, Specialty Towing was insured by Jefferson Pilot. Huttner owned a motorcycle and a van which were insured by State Farm. Jackie Cooper was insured by First Southern Insurance Company.[1] The trial judge granted summary judgment to Jefferson Pilot and directed verdicts in favor of State Farm and Guaranty Association.

## DISCUSSION

### I. Jefferson Pilot

 Depending upon whether or not Huttner was a permissive driver of the Beretta, Yensen and Barnhill assert they are entitled to either uninsured or underinsured motorist coverage as insureds under the Jefferson Pilot policy. The policy provided both uninsured or underinsured motorist coverage of $300,000 to Specialty Towing. The policy defined "insured" as "anyone else 'occupying' a covered auto." According to the policy, "occupying" was defined as "in, upon, getting in, on, out or off."

The trial court granted summary judgment to Jefferson Pilot. The court concluded neither Yensen nor Barnhill was an insured under the policy because neither was "occupying" the tow truck as defined by the policy. Yensen and Barnhill argue the trial court erred as a matter of law in granting summary judgment to Jefferson Pilot because they were involved with the tow truck at the scene and were injured as a result of its "use."

---

1. First Southern was later placed into receivership and liquidated. In its place, the South Carolina Property and Casualty Guaranty Association took over handling of these claims.

■ Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Quality Towing, Inc. v. City of Myrtle Beach,* 340 S.C. 29, 530 S.E.2d 369 (2000). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact. *ML–Lee Acquisition Fund, L.P. v. Deloitte & Touche,* 320 S.C. 143, 463 S.E.2d 618 (Ct.App.1995), *rev'd in part on other grounds,* 327 S.C. 238, 489 S.E.2d 470 (1997). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000).

Viewing the evidence in the light most favorable to them, Officer Barnhill and Yensen were sitting in Barnhill's patrol car preparing an accident report for Yensen's Camaro when the tow truck arrived. The tow truck driver began hooking chains to Yensen's Camaro. Barnhill advised Yensen to retrieve his personal items from the car before it was lifted onto the tow truck. Both Barnhill and Yensen exited the patrol car and went to the driver's side of the Camaro. They were standing on the driver's side near the rear view mirror when Huttner struck them. In his deposition, Yensen testified he had called a friend to come pick him up. However, he also testified that he was planning to leave the scene with the tow truck driver. It is this testimony which Yensen asserts constitutes a genuine issue of material fact sufficient to survive summary judgment. Barnhill's position is that because he was acting in his official capacity of supervising the attachment of the Camaro to the tow truck, he was "occupying" the tow truck. We disagree with both assertions.

The trial judge correctly determined that Yensen and Barnhill were not insureds under the Jefferson Pilot policy. They were not occupying the tow truck as the policy defines that

term.[2] Under the plain meaning of the words, neither Yensen nor Barnhill was "in, upon, getting in, on, out or off" the tow truck. While there was some testimony that Yensen intended to leave the scene in the tow truck, at the time of the accident, he was not in or on the tow truck, nor was he in the process of getting into it.

Further, under *Whitmire,* 254 S.C. at 187–92, 174 S.E.2d at 393–95, we do not find Yensen to have been alighting from the tow truck. *Whitmire* held that where a passenger was struck while within two or three feet of the car he had immediately "alighted from," that passenger may collect uninsured motorist coverage from the insurer of the car he had been riding in. *Id.* at 191–92, 174 S.E.2d at 394–95. Appellants argue that *Whitmire* is controlling in this case because Yensen intended to occupy the tow truck and should therefore be able to collect insurance from the tow truck's insurance provider. *Whitmire* is distinguishable because there, the plaintiff had unquestionably been occupying the car, whereas this case involves, at most, Yensen's *intent* to occupy the tow truck, expressed after the accident and during litigation. We are reluctant to extend *Whitmire* to these facts because Yensen was not "still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions." *Id.* at 191, 174 S.E.2d at 394.

Appellants' reliance upon *Merck v. Nationwide Mut. Ins. Co.,* 318 S.C. 22, 455 S.E.2d 697 (1995) is unavailing. That case dealt with the issue of stacking of underinsured motorist coverage. In *Merck,* the insured's disabled vehicle was on a tow truck in the emergency lane. *Id.* at 23–24, 455 S.E.2d at 698. The insured was standing beside the tow truck with the tow truck driver when an intoxicated driver ran off the road, striking the insured, the tow truck driver, and the tow truck. *Id.* The supreme court affirmed this court's conclusion that the insured's vehicle was "involved in the accident" because it was present at the scene, and the accident had an effect on it when

---

**2.** *See McAbee v. Nationwide Mut. Ins. Co.,* 249 S.C. 96, 152 S.E.2d 731 (1967) (holding discussion of term "upon" as synonymous with "contact with"); *Whitmire v. Nationwide Mut. Ins. Co.,* 254 S.C. 184, 174 S.E.2d 391 (1970) (stating term "alighting from" extends to situation where the body has reached a point where there is no contact with the vehicle).

the car was thrown from the wrecker. *Id.* at 24, 455 S.E.2d at 698. In *Merck,* uninsured coverage on the tow truck was not an issue as it is in this case. Rather, *Merck* dealt with whether the victim's own vehicle was "involved in the accident," an issue not disputed here where all parties agree that Yensen's vehicle was involved in the accident. Moreover, in *Merck* the policy and S.C.Code Ann. section 38–77–160 (1989), provided coverage to vehicles "involved in the accident," while here, coverage is afforded to individuals "occupying the vehicle."

Appellants also argue they should collect under the Jefferson Pilot policy because they were "involved" with the tow truck at the time of their injuries, citing *State Farm Mutual Automobile Insurance Company v. Bookert,* 330 S.C. 221, 499 S.E.2d 480 (Ct.App.1998). This reliance is misplaced. In *Bookert,* a gunman riding in a vehicle shot and injured a pedestrian. This court held the pedestrian could collect underinsured motorist insurance coverage from his policy because his injury arose out of the gunman's use of his own vehicle, making the gunman's vehicle an "active accessory" to the crime. *Id.* at 230–31, 499 S.E.2d at 485. In both *Bookert* and its predecessor *Wausau Underwriters Insurance Company v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992), this court and the supreme court stated that the gunman's vehicle was an "active accessory" to the crime where there was a sufficient causal connection between the gunman's use of his vehicle and the other party's injuries. *Bookert,* 330 S.C. at 231, 499 S.E.2d at 485; *Howser,* 309 S.C. at 273, 422 S.E.2d at 108. Appellants seek to apply this reasoning to this case, suggesting the gunman's vehicle is akin to the tow truck in this case. However, unlike the shooter's use of his vehicle in *Bookert* and *Howser,* Huttner did not use the tow truck in any way that could be construed to make the tow truck an "active accessory" to this accident. In fact, Huttner had no contact with the tow truck, either before or after the accident. Further, there is no causal connection between the tow truck and the injuries Yensen and Barnhill suffered.[3]

---

3. Both Yensen and Barnhill were struck directly by Huttner's Beretta. Neither one was injured by the tow truck in any way.

In our view, neither Yensen nor Barnhill was occupying the tow truck as that term is defined in the policy. Accordingly, we affirm the trial court's grant of summary judgment.

## II. State Farm

State Farm insured both a motorcycle and a van owned by Huttner. The State Farm policies provided liability coverage to Huttner to use other cars, specifically defined as a newly acquired car, a temporary substitute car, or a non-owned car. The trial judge granted a directed verdict to State Farm concluding the Beretta was not a newly acquired car, a temporary substitute car, or a non-owned car as defined by the State Farm policies.

In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. *Adams v. G.J. Creel & Sons,* 320 S.C. 274, 465 S.E.2d 84 (1995). The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. *Id.* The appellate court will reverse the trial court only when there is no evidence to support the ruling below. *Steinke v. South Carolina Dep't of Labor, Licensing, & Regulation,* 336 S.C. 373, 520 S.E.2d 142 (1999).

Yensen and Barnhill contend the trial court erred in granting a directed verdict. They argue there is more than one reasonable inference to be drawn from the facts as to whether Huttner had permission from Jackie Cooper to drive the Beretta. They also argue State Farm's policy language contravenes South Carolina's mandatory insurance requirements by limiting the circumstances in which State Farm provides liability coverage for non-owned vehicles.

### (a)

The State Farm policies state "the liability coverage extends to use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car." Yensen and Barnhill argue this contractual language violates South Carolina's mandatory insurance requirements, relying upon *State*

*Automobile Property & Casualty Insurance Company v. Gibbs,* 314 S.C. 345, 444 S.E.2d 504 (1994).

▉ Yensen and Barnhill cite language in *Gibbs* which states, "South Carolina law is clear that liability to third parties under an owner's automobile liability policy is absolute when injury occurs." *Id.* at 349, 444 S.E.2d at 506 (citing S.C.Code Ann. §§ 56–9–20(7)(b)(1) & (b)(3)). The supreme court made this statement in the context of its discussion of an exclusion contained in a non-owner's insurance policy. The court referenced specific statutes defining a motor vehicle liability policy. *See* S.C.Code Ann. § 56–9–20(5) and 5(b) (Supp.1999). In the language of section 56–9–20, a motor vehicle liability policy is one that meets the requirements of sections 38–77–140 through 230. Yensen and Barnhill apply the language from *Gibbs* out of context because the case deals with statutorily required coverage. Liability coverage for non-owned vehicles is not statutorily required in this state and is provided by a voluntary contract between the insurer and the insured. *Jackson v. State Farm Mut. Auto. Ins. Co.,* 288 S.C. 335, 337, 342 S.E.2d 603, 604 (1986). Accordingly, the parties may choose their own terms regarding coverage for non-owned vehicles. *Id.* Therefore, *Gibbs* is not applicable, and the State Farm policies do not violate South Carolina's mandatory insurance requirements.

(b)

The State Farm policies provide "the liability coverage extends to use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car." The parties do not contend the Beretta was a "newly acquired car." Thus, our only determination is whether the Beretta was a temporary substitute car or a non-owned car. We agree with the trial court that it was neither.

▉ The State Farm policies define a temporary substitute car as "a car not owned by you or your spouse, if it replaces your car for a short time. Its use has to be with the consent of the owner. Your car has to be out of use due to its breakdown, repair, servicing, damage or loss." While Yensen and Barnhill have argued Huttner had permission to use the Beretta, they did not specifically address the trial court's

additional ruling that there was no reliable evidence Huttner's motorcycle or van was out of use due to breakdown or servicing. Based upon their failure to address this additional ruling, we affirm the trial court. *See Anderson v. Short*, 323 S.C. 522, 476 S.E.2d 475 (1996) (holding where the ruling of the trial judge is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds).

██ The State Farm policies define a "non-owned car" as "a car *not* owned by or registered or leased in the name of: (4) an employer of you, your spouse or any relative." (emphasis added) Based upon this definition, the Beretta did not qualify as a non-owned car because it was owned by Huttner's employer, Jackie Cooper. Under the policy definition, coverage was excluded regardless of whether Huttner had permission from Jackie Cooper to drive the Beretta.

Accordingly, we affirm the trial judge's finding that State Farm was entitled to a directed verdict.

### III. Guaranty Association

██ Yensen and Barnhill also contend the trial court erred in granting a directed verdict to Guaranty Association. They assert there is a question of fact as to whether Huttner had permission from Jackie Cooper to drive the Beretta.

Huttner worked in the body shop at Jackie Cooper. Initially, he was hired as "just a body man," but Huttner testified that he later took over as "manager". While working at Jackie Cooper, Huttner often drove cars he was working on for business purposes such as to pick up parts or to test drive them. He testified he also "kind of" drove cars for pleasure. He usually asked Jim Dill, a Jackie Cooper manager, for permission to drive a vehicle. Huttner admitted he had driven company cars out of town before, but not as far as Charleston. Huttner had access to the key and had used the Beretta before to pick up parts.

On the day of the accident, Huttner left work around 5:00 p.m. He had driven his truck to work that day. Huttner decided to drive to Charleston that night to see his family and possibly locate some parts for the Beretta. Although Huttner did not ask for permission to drive the Beretta, he did not feel there was a problem for him to use the car, since he occasion-

ally used Jackie Cooper cars. Huttner stated that as far as he was concerned he had permission to drive the Beretta.

State Trooper Barry Watson investigated the Yensen/Barnhill accident after Huttner was arrested for felony DUI. According to Watson, Huttner made conflicting statements about whether he had permission to drive the Beretta. Watson initially charged Huttner with use of a vehicle without the owner's consent after Watson spoke to Jim Dill at Jackie Cooper and was told Huttner did not have permission to use the car. However, that charge was dropped after Watson spoke to Jackie Cooper. Watson testified Cooper stated Huttner had both access and consent to drive cars he was working on.

Viewing the evidence in the light most favorable to Yensen and Barnhill, more than one reasonable inference can be drawn from the evidence on the issue of permission. Accordingly, we conclude the trial court erred in granting a directed verdict to Guaranty Association and reverse and remand for a hearing on this issue.

### IV. Proffered Testimony

Finally, Yensen and Barnhill also argue the trial court erred by failing to allow them to include certain portions of the deposition of a witness, Terry Meade, in the record on appeal. It is well-settled that the admission or rejection of proffered testimony is within the trial judge's discretion and will not be disturbed on appeal absent a showing of an abuse of discretion, legal error, or prejudice to the appellant. *State v. Gay*, 343 S.C. 543, 549, 541 S.E.2d 541, 544 (2001). However, all relevant evidence should be deemed admissible. Rule 402, SCRE. Because we are remanding this case to the trial court on the issue of whether Huttner had permission to drive the Beretta, we believe Yensen and Barnhill are entitled to present any relevant evidence on this issue. Since the trial judge gave no reason for excluding the proffered testimony and we can discern none from the record, we find the trial judge abused his discretion in excluding this testimony and remand this issue to the trial court.

## CONCLUSION

We affirm the grant of summary judgment to Jefferson Pilot and the grant of a directed verdict to State Farm. We reverse the grant of a directed verdict to Guaranty Association and remand to the trial court for further proceedings. We also reverse the exclusion of the proffered deposition testimony and remand this issue to the trial court.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

CURETON and CONNOR, JJ., concur.